THE PEOPLE OF THE STATE OF NEW YORK ex rel. BOARD OF FOREIGN MISSIONS OF THE METHODIST EPISCOPAL CHURCH, Respondent, *v.* THE BOARD OF ASSESSORS OF THE CITY OF YONKERS, Appellant. (102, 168, 176 and 198 Park Hill Avenue, 26 Lakeside Drive and 253 Van Cortlandt Park Avenue.)

Second Department, November 16, 1923.

**Taxation — exemption — relator is corporation within purview of Tax Law, § 4, subd. 7, relating to exemptions — property of relator used as hotel by public for pay not exempt — no part of property was used exclusively for religious purposes.**

The property of the relator, which is a corporation within the purview of subdivision 7 of section 4 of the Tax Law relating to exemptions, is not exempt from taxation for the year 1921, since it appears that while the property was to some extent used by the relator for religious purposes, it was mainly used as a hotel, dining room, garage, bowling alleys and lawn tennis courts by the public at large, for pay, and without discrimination between those who were and those who were not connected with the relator.

The finding of the referee to the effect that the relator's property while consisting of six separate parcels was, in fact, one parcel of property devoted to the purposes of the relator and used as one, and that it was used in such a manner by the relator that it cannot claim exemption of any particular part thereof under the statute, is supported by the evidence.

APPEALS by the Board of Assessors of the City of Yonkers from six separate judgments of the Supreme Court, entered in the office of the clerk of the county of Westchester on the 29th day of September, 1922, upon the decision of the court, rendered upon a motion made at the Orange Special Term to confirm the reports of a referee appointed upon the returns made to writs of certiorari

**152** People ex rel. Bd. Foreign Missions *v.* Bd. of Assessors.

Second Department, November, 1923. [Vol. 207

issued out of the Supreme Court and attested on the 15th day of October, 1920, adjudging certain property of the respondent in the city of Yonkers exempt from taxation.

*John J. Broderick* [*James Taylor Lewis, Corporation Counsel,* with him on the brief], for the appellant.

*William L. Ransom* [*William O. Gantz, Colley E. Williams* and *George G. Bogert* with him on the brief], for the respondent Board of Foreign Missions.

Manning, J.:

The effect of the judgments so rendered was to cancel and vacate the assessments for the year 1920 made by the board of assessors of the city of Yonkers as a basis for the annual taxes for the year 1921 upon six parcels of real property owned, occupied and used by the respondent, the Board of Foreign Missions of the Methodist Episcopal Church.

After the assessments had been levied the respondent secured six separate writs of certiorari, and upon the board of assessors making a return thereto, an order was made referring the matter to a referee to take evidence and report.

At the conclusion of the inquiry the referee made separate reports as to each parcel of property, together with findings of fact and conclusions of law, and he also rendered an opinion. His conclusion was that the assessments levied by the board of assessors were valid and legal in every respect.

The respondent's contention before the referee was that its property being, as they claimed, used exclusively for religious purposes, no assessments or taxes could legally be levied thereon.

The referee found that the evidence in the case clearly showed that notwithstanding the fact that the respondent was a corporation within the purview of the statute relating to tax exemptions, nevertheless, the property upon which the exemption was claimed by the respondent was not used exclusively for religious purposes; but, on the contrary, that such property was used primarily and almost exclusively for business, and only incidentally for religious purposes.

When the referee's report was presented for confirmation, the learned justice presiding at Special Term differed from the referee on this main question, and was of the opinion that the testimony elicited upon the hearings showed just to the contrary; and he, therefore, decided that the conclusion reached by the referee finding the property liable to taxation was in error. In his opinion the learned justice said: " It does not appear that the relator made a business of or habitually extended the use of any of the property to strangers. Nor that in extending occasional privileges to

strangers it did so for the purpose of pecuniary gain or as a guise or pretense for directly or indirectly making pecuniary profit for the board or any of its employees." The learned justice concludes by stating: " It may be said, however, in passing, that in the future it would be well for the relator to discontinue such outside activities that it may be entirely free from any suspicion of attempting to evade the provisions of the statute."

A careful examination of the testimony in these cases justifies the acts of the board of assessors in levying taxes upon the property involved, and as a result the judgments appealed from must be reversed and the action of the board of assessors upheld.

The property affected consists of six separate parcels, the combined area of which is about 167 acres. Erected thereon are three substantial buildings, and the premises are located on what is known as Park Hill, said to be one of the most exclusive residential sections of the city of Yonkers. Yonkers is a city of the second class, containing over 100,000 inhabitants, and is in close proximity to the city of New York. The property was acquired by the relator at different times, but the evidence shows that the whole of the six parcels is practically used as one by the respondent for various purposes connected with the business of the missionary board. The parcel known as No. 176 Park Hill avenue is the one about which the real difficulty arose between the parties. Upon this parcel is situated a substantial three and one-half story frame building containing about one hundred guest rooms, several large parlors and a public dining room. The building itself is known as Wallace Lodge. Another parcel, No. 253 Van Cortlandt Park avenue, has upon it a substantial frame building known as the Club House. This building contains an assembly hall seating between 300 and 400 persons, and eight smaller rooms, used for conferences. In this building there are bowling alleys, shower baths, and adjoining the building are several tennis courts. Another parcel, known and designated as No. 198 Park Hill avenue, is improved with a substantial building known as The Annex. This building contains twenty-two rooms. Three other parcels known, respectively, as No. 168 Park Hill avenue, No. 102 Park Hill avenue and No. 26 Lakeside Drive, are unimproved. The two properties on Park Hill avenue are fenced in, and the Lakeside Drive property is part of what is known as the garage land.

The testimony shows that the building known as Wallace Lodge has really been devoted to hotel purposes, with its one hundred guest rooms, parlors, reception rooms and public dining room, and that it was used almost entirely for the registering of guests who came there. Before it was acquired by the missionary society

it had been a well-known boarding house. During the year 1920 guests were entertained there who were in nowise connected with the activities of the missionary society at all — in fact they appear to have been permanent guests, paying their way just as they would have done at any other hotel. Some of these people had been living there at various times for over two years, who had no connection with the society at all, and one of them had stayed there for three years. It is true that missionaries and clergymen stayed there for long periods of time and paid for their accommodations. Entire families, not missionaries, lived there, and their children went off to college from that place. Guests were regularly assigned to rooms and took their meals as guests would at any hotel. A regular hotel register was kept, and in this register no distinction was made as to whether the persons registered therein were missionaries or not. It appears that several families from Yonkers spent some portion of their time there when their homes were without servants. On many occasions all of the guests were outside guests, as many as twenty being registered in a single day, not one of whom was connected with a religious organization. Guests were accepted without any reservations whatsoever. There was a public dining room maintained in the place, in which meals were served. A cash meal book was kept. But there is nothing to show that any of the guests were connected with the missionary board. There was a regular charge for meals during the entire year, and each person desiring to dine there was obliged to purchase a meal ticket before being served. Regular prices were charged for meals, and the rates charged guests for rooms varied from three to seven dollars per day. The Lodge was advertised in various programmes as being available for entertainments. People were in the habit of going there for meals and parking their cars in the yard. Persons who stayed there over night had their cars cared for in the association's garage. The income from the garage alone in 1920 was $1,289.04. The building known as the Club House contained bowling alleys and shower baths. Both guests and outsiders had the privilege of using these bowling alleys. Circulars were sent out offering the lawn tennis courts for hire at $25 for a specified period of time. The amount received for the use of the bowling alleys and lawn tennis courts from outsiders for the year 1920 was $2,421.55. For the use of the Club House auditorium and conference rooms there was a regular charge made of $10 per session. Upon the property No. 198 Park Hill avenue is a very substantial house of twenty-two or twenty-five rooms, standing in the center of a plot containing two or three acres. In addition to the mis-

sionaries and their children, the female employees of the Lodge were domiciled therein. The properties known and designated as No. 198 Park Hill avenue and No. 102 Park Hill avenue are fenced in, and are used as recreation grounds and walks and as a place of open air diversion for the guests of Wallace Lodge.

So, from the uncontradicted evidence in this case, produced by the relator's own employees, it appears that Wallace Lodge is run just as any other hotel is run, and we find nothing in the evidence in this case to distinguish the Wallace Lodge property from any other hotel enterprise, except, perhaps, the provision that certain religious workers and missionaries were given preference over the public at large.

Having regard to the evidence disclosed by the record in these cases we are of the opinion that the relator cannot claim exemption from taxation, although it is a corporation clearly entitled to exemption under the provisions of the Tax Law. To entitle it to exemption, however, the burden is upon the relator to prove that its property is exclusively used for religious purposes and that it has brought itself within the provision of the statute. This burden, we conclude, the relator has not sustained, for we think it clearly appears that its property was used for business, rather than for religious purposes. The provisions of the Tax Law of the State of New York exempting property from taxation are to be strictly construed against the claimant. (See *People ex rel. D. K. E. Society* v. *Lawler,* 74 App. Div. 553, 557; affd., 179 N. Y. 535; *People ex rel. Young Men's Assn.* v. *Sayles,* 32 App. Div. 197; affd., 157 N. Y. 677; *People ex rel. Adelphi College* v. *Wells,* 97 App. Div. 312; affd., 180 N. Y. 534; *People ex rel. Catholic Union* v. *Sayles,* 32 App. Div. 203; affd., 157 N. Y. 679. See, also, *Matter of Young Women's Christian Assn.,* 141 N. Y. Supp. 260; affd., *sub nom. Young Women's Christian Assn.* v. *Carr,* 158 App. Div. 908; *Matter of Young Women's Christian Assn.,* 156 id. 295; affd., 209 N. Y. 534.)

The learned trial justice in rendering his opinion referred to *Matter of Silver Bay Association for Christian Conferences & Training* (196 App. Div. 913). That case, however, is easily distinguishable from the present case. In the *Silver Bay* case it appeared that the association had procured a tract of land in the town of Hague, Warren county, N. Y., and upon it erected a hotel, a forest inn, and a number of cottages. There was a farm upon this tract upon which were kept cows, chickens and pigs. The property was located on the shores of Lake George, several miles distant from any village, transportation station or place of supply. Upon the property and in its buildings were conducted a series of schools for instruction and

training. Mr. Justice Van Kirk, in deciding that case, concluded as a matter of law that any use of the property outside of the declared lawful purposes could only be occasional, incidental and resulting from natural or unexpected conditions, or as an accommodation, the refusal of which would amount to unnecessary meanness, else the right of exemption would be lost, and that the use outside of lawful purposes must not be continuous and must not become a practice. Of course, the cases are not parallel, and the *Silver Bay* case is really no authority here.

A point is raised in the respondent's brief that the referee erred in refusing to exempt a part of the property which the respondent claims was not shown to have been used for purposes other than religious purposes. The statute does provide that if a portion only of any lot or building of any such corporation is " used exclusively for carrying out thereupon one or more such purposes * * *, then such lot or building shall be so exempt only to the extent of the value of the portion so used." (Tax Law, § 4, subd. 7, as amd. by Laws of 1918, chap. 288.)* In other words, the respondent claims that if a part of a single lot of their property was used exclusively for corporate purposes, then it would be entitled to exemption on that part of the particular lot; and that if a part of a single house was used exclusively for corporate purposes, then the relator would be entitled to exemption upon that part of the house. This point is disposed of by the referee's finding, which we think is amply supported by the evidence, which is to the effect that the relator's property, while consisting of six separate parcels, is, in fact, one parcel of property, devoted to the purposes of the association and used as one, but that the property was used in such a manner by the missionary board that it cannot claim exemption under the statute.

It follows that the judgment in each case which vacates and sets aside the assessment levied upon the relator's property for the year 1920 for the taxes of the year 1921, should be reversed upon the law and the facts, and the several writs of certiorari quashed and dismissed, with costs.

Kelly, P. J., Rich, Kelby and Young, JJ., concur.

On each appeal judgment reversed on the law and the facts, and writ of certiorari quashed and dismissed, with costs. All findings of fact inconsistent herewith are reversed. Appropriate findings of fact and conclusions of law in conformity with this decision will be signed by the court. Settle findings and order upon notice before Mr. Justice Manning.

