NATIONAL NAVY CLUB OF NEW YORK, INC., Plaintiff, *v.* THE
CITY OF NEW YORK, Defendant.

Supreme Court, New York Special Term, December, 1923. ·

Taxation — exemptions — premises in New York city maintained exclu-
sively for enlisted men and petty officers of the United States Navy
and Marine Corps exempt by virtue of Tax Law, § 4, subd. 7 — judgment
canceling assessments granted where real estate is exclusively operated
for purposes set forth in certificate of incorporation — when words
" clubs " or " clubhouses " will be given meaning consistent with
provisions of incorporation certificate.

The National Navy Club of New York, Inc., a membership corporation, being
the owner of two four-story and basement brick dwellings in the city of New
York, improved and uses the same as one building which it maintains for the
benefit of enlisted men of the United States Navy and Marine Corps and for
the purpose of improving certain conditions affecting, from time to time, the
rank and file of the men of the Navy. *Held*, that said corporation was exempt
from taxation by virtue of section 4(7) of the Tax Law.

Where on the face of the certificate of incorporation of the National Navy Club
of New York, Inc., and from the actual conditions and developments shown
upon the trial of an action to cancel assessments made against its real estate
it is apparent that plaintiff exclusively uses and maintains said real estate for
the purposes and objects for which plaintiff was incorporated, judgment will
be granted in its favor.

One of the objects of plaintiff as set forth in its charter is " to encourage social
intercourse among enlisted men in active service in the United States Navy
and Marine Corps," and another is to establish and maintain for their use and
accommodation suitable quarters " and such other facilities and such appurte-
nances and belongings as are usual in clubs or clubhouses." *Held*, that there
was no warrant for giving to the words " clubs " or " clubhouses " a meaning
which they may not have consistently with the provisions of plaintiff's certificate
of incorporation or its amended certificate, in both of which said words appear,
or with the objects expressed in either, and that it was entirely unfair for
defendant to lay stress on the fact that plaintiff is authorized to conduct a
so-called " club," which is merely the place where the men come and meet to
be entertained and accommodated.

ACTIONS to cancel assessments made against real estate owned
by plaintiff.

*Hamilton & Freeman* (*William H. Hamilton,* of counsel), for
plaintiff.

*George P. Nicholson,* corporation counsel (*William H. King* and
*Barrett Carmody,* of counsel), for defendant.

GAVEGAN, J. These are two actions to cancel real estate assess-
ments brought by the National Navy Club of New York, Inc.,
which is a membership corporation maintaining the premise*

**90** National Navy Club of N. Y., Inc., *v.* City of New York.

Supreme Court, December, 1923. [Vol. 122

referred to below for the benefit of enlisted men of the United States Navy and Marine Corps. The assessments were fixed by the city of New York as the basis of taxation, in the years 1921, 1922 and 1923, of Nos. 13 and 15 East Forty-first street, borough of Manhattan, city of New York, where the improvements are two four-story and basement brick dwellings used as one building.

Plaintiff contends that when the assessments were made the land and buildings were exempt from taxation by virtue of subdivision 7 of section 4 of the Tax Law (Laws of 1909, chap. 62), which provides as follows:

" 7. The real property of a corporation or association organized exclusively for the moral or mental improvement of men or women, or for * * * charitable, benevolent * * * or * * * patriotic * * * purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes, * * * shall be exempt from taxation. * * * "

The property affected by said assessments is exclusively used by plaintiff in carrying out its work, which is described below. The street or basement floor of No. 13 East Forty-first street is given over to a canteen restaurant, kitchen and store room, and in No. 15 to a reception room, pool room, check and mail room, shower baths and lavatories. On the parlor floor there are the executive offices of plaintiff as well as writing and reading rooms, a lounge, a library and a clerk's desk. The three upper floors are used for sleeping quarters and are divided into fourteen dormitories and fourteen single and double rooms, containing 145 beds. These are for the use of enlisted men in the United States Navy and Marine Corps, who are charged fifty cents a night for beds in a dormitory and seventy-five cents for beds in single or double rooms. By the week, double rooms are charged for at the rate of four dollars per man and single rooms at the rate of five dollars. All other accommodations, including baths and towels, are furnished free, excepting that charges are made for meals and the use of the pool tables, meals being served at cost and less. The writing rooms and library, which provides books, periodicals and magazines, are free. There is also a weekly dancing class, with instruction, and tickets are furnished to concerts and for bus and boat rides in this vicinity, all without charge.

At the trial plaintiff's manager testified that petty officers of the navy as well as enlisted men are entitled to its privileges; that some men, such as local recruiting sergeants, were fairly permanent guests; that on occasions the capacity of the houses is exhausted, and that in the fall of 1920 as many as 500 men a week were

accommodated.   To none but enlisted men and petty officers of the Navy and Marine Corps are the accommodations and facilities afforded by plaintiff available.   For them it also furnishes occasional financial assistance out of a special fund maintained for that purpose.

The testimony is that less than one-third of the expense of this institution is covered by what is paid by the men themselves.   The balance is obtained from benefits, contributions and endowments. One gift of $110,000 has been received.   In three and a half years the general public has subscribed approximately $125,000.   The idea of pecuniary profit is excluded by the fact that plaintiff is a membership corporation.

Plaintiff has some eighty volunteer workers, thirty of whom are directors.   It is some of these workers who conduct the canteen restaurant.   Others are engaged in raising funds, looking after the reception of the men, and providing entertainment for the men and members of their families and friends.

Plaintiff's original certificate of incorporation, filed July 31, 1918, sets forth that its objects and purposes are as follows:

" To voluntarily promote social intercourse among the men who are serving either in the Naval Forces of the United States of America as Chief Petty Officers, Petty Officers and enlisted men, or men in the Naval Forces of the other Nations allied against the Central Powers of Europe in the present War, and for that purpose to establish and maintain in the City of New York for the use and accommodation of such men suitable quarters including Reading and Writing Rooms, baths, and such other facilities and such appurtenances and belongings as are usually in Clubs and Clubhouses.

" No fees or dues are to be charged such men for the advantages and privileges of said club."

In July, 1920, the certificate of incorporation was amended so as to state its objects and purposes to be as follows:

" To encourage social intercourse among enlisted men in active service in the United States Navy and Marine Corps, including those who have served honorably in either branch; to promote among them a spirit of patriotism and a regard for law and order; to improve conditions for those in the service and strengthen their morale; and to establish and maintain in the City of New York for their use and accommodation suitable quarters including reading and writing rooms, baths, canteens, lodgings and such other facilities and such appurtenances and belongings as are usual in Clubs or Clubhouses established for the members or proprietors thereof, and as may conduce to the good and general welfare of the United

States in times of peace or war, in respect of its Naval Forces in all branches."

The testimony shows that plaintiff cannot carry out the objects for which it is organized without a building located in a central, convenient and attractive neighborhood, where those who prey upon sailors are not apt to appear. Plaintiff's manager testified that "The Navy Club has been the means of giving these men a respectable sleeping place, an objective when they are on liberty, in New York city, a place where they may receive accumulated mail from friends and from home in returning from cruises; and the general associations and clean surroundings, their conversation with the voluntary helpers and with the workers, have tended towards their improvement, and their enjoying clean wholesome liberty in New York, which has kept them away from the parasites and pitfalls that are especially waiting the men in the naval uniform in New York city."

Captain Byron A. Law, a witness for plaintiff, testified that he has been in the United States Naval Forces for twenty-four years, having served about fifteen years at sea; that he is acquainted with plaintiff's work and has frequently been in the premises referred to above; and further testified: "The great number of our enlisted men come from the interior, they are all young boys, the average age being about twenty-one or twenty-two, and the minimum age eighteen. When these boys are granted liberty they have no homes, they go ashore in this city, and are subject to all the temptations of a large city, and being strangers they are set upon by bootleggers, prostitutes, street walkers, gamblers and degenerates. There is little escape for the men because they have no place to go, at least they have had none until the setting up of the National Navy Club. They are not welcome in hotels, and they haven't enough money, as a matter of fact, to go to the better places of entertainment, and as soon as the small amount of money which they have is gone, they are entirely adrift."

He also testified that the work conducted by plaintiff meets with the general approval of the officers of the United States Navy; that it is generally considered a necessity for the men of the Navy; and that "There is no question that the boys who come from this club come back in good condition and are free from the effects that we notice in boys who have spent the night along Broadway or drifting along the streets."

The testimony also indicates that sailors on shore leave here have participated in fewer brawls and other breaches of the peace since plaintiff has been conducting this work. Its activity in this respect tends to reduce disorder and the loss of time of members

of the police department, thus resulting in a direct benefit to the city and tending to compensate it for any loss it might incur from exemption of plaintiff's real property from taxation.

It is argued for the city that plaintiff is not organized exclusively for purposes within the contemplation of subdivision 7 of section 4 of the Tax Law of the state, and that its realty was not used exclusively for such purposes when the assessments were made.

In support of this, counsel for defendant point to the provisions of plaintiff's charter, particularly the provision which refers to one of its objects as being " to encourage social intercourse among enlisted men in active service in the United States Navy and Marine Corps " and also emphasizes that part of the certificate of incorporation which sets forth plaintiff's objects and contains the following: " * * * To establish and maintain * * * for their use and accommodation suitable quarters, including reading and writing rooms, baths, canteens, lodgings and such other facilities and such appurtenances and belongings as are usual in clubs or clubhouses * * *."

The fair construction of these clauses is indicated by the manner in which plaintiff has proceeded to carry out the objects they express. There is no warrant for giving to the words " clubs " and " clubhouses " a meaning which they may not have consistently with the provisions of plaintiff's certificate of incorporation and its amended certificate or with the objects as expressed in either. Both on the face of the certificate and from the actual conditions and developments as shown at the trial, it is apparent that plaintiff is exclusively organized and conducted and exclusively operates the real estate referred to for the purpose of improving certain conditions affecting, from time to time, the rank and file of the men of our Navy, and thus, and fundamentally, to " strengthen their morale " and " promote among them a spirit of patriotism and a regard for law and order."

That there was ample reason for plaintiff's organization and that there is an open field for its activities, a field no governmental agency has occupied, and that the objects sought are being accomplished, incidentally with direct benefit to the city itself, is shown by the record in this case.

The main and controlling objects for plaintiff's existence and organization are none the less exclusive, in the statutory sense, because they can only be accomplished by subsidiary activities, such as providing quarters for men during their usually brief periods on shore. Though counsel for defendant dwell on the word " exclusively " in the statute and assert that plaintiff is not exclusively organized for the benevolent and patriotic purposes

indicted at the trial and referred to above, they fail to suggest any method of accomplishing the main objects of plaintiff's organization without the exercise of its subsidiary purposes.

The men on shore leave are housed and fed, accommodated in various ways, entertained and made comfortable, and all for less than one-third of the actual cost thereof in money. This is made possible by endowments and contributions from persons benevolently and patriotically inclined, as well as by the voluntary service of the " workers," whose personal work may well be as essential as and even more important than the money expended or the realty used. No argument advanced on behalf of the city tends to indicate in the least that the service of these volunteer workers has not been induced by and has not for its sole purpose the accomplishment of the benevolent and patriotic objects which is the very purpose of plaintiff's existence.

It is true that plaintiff's charter refers to other objects but clearly they are merely the means or methods of carrying out the ultimate purpose of its existence. Strictly speaking, it would not be necessary to disclose such subsidiary functions in the certificate of incorporation. Mention of them is a precautionary measure taken by a careful lawyer, that the accomplishment of the purposes for which plaintiff is organized, maintained and conducted may not be hindered by any question as to the right to undertake subsidiary activities necessary to the accomplishment of its true ends.

Plaintiff's charter authorizes it to employ means and methods of carrying out its main object not because they are additional to the main purpose, but because they are, as means and methods, necessary for its accomplishment. Their statement is merely descriptive of the main purpose. They do not change the ultimate object, the one exclusive object for which plaintiff exists, but merely pave the way for carrying it on.

It is entirely unfair for defendant to lay stress on the fact that plaintiff is authorized to conduct a so-called " club." It is necessary to have a place to which the men will be attracted. By accommodating them under proper auspices they are forestalled from finding their way into accommodations with indecent surroundings. The " club " is merely the place where they come and meet, to be entertained and accommodated. The place, the entertainment and all the accommodations provided are the means to the end, the benevolent and patriotic service plaintiff is rendering. The maintenance of a club in the sense in which the city's representatives would have us take the word is not the object of this institution.

It is a benevolent and patriotic service to strengthen the morale of the enlisted men of the Navy, showing an interest in them and

looking after them while they are on shore leave, and protecting them against the temptations and dangers to which they, as a class, are subjected.

The city cites a recent case (*People ex rel. Bd. Foreign Missions v. Bd. of Assessors*, 207 App. Div. 151), decided in the Appellate Division, second department, but the opinion in that case discloses that it has no application to the facts here. It was contended there that the property, for which exemption from taxation was sought, was devoted exclusively to religious purposes. As a matter of fact it was conducted as a hotel where " regular prices " for meals were charged, where *per diem* room charges of four dollars to seven dollars a day were made, and where both those affiliated with the society and strangers were accommodated. Mr. Justice Manning in his opinion says that " * * * upon the uncontradicted evidence," the property " is run just as any other hotel is run, * * *."

Another argument advanced by the city is that the enlisted men are not in need of help and that they would be the first to resent the imputation that they are objects of charity. There is no such imputation and this very argument was advanced and answered in the case of *Webster Apartments* v. *City of New York*, 118 Misc. Rep. 91; affd., 206 App. Div. 749.

Judgments for plaintiff will be directed. Proceed on notice.

Judgment accordingly.