Harold R. Soden, J.
Plattsburgh College Benevolent and Educational Association, Inc. brought this proceeding against respondent Board of Assessors, to claim the benefit of the tax exemption provided by section 420 of the Real Property Tax Law for qualifying corporations or associations. The petitioner *742 has paid the assessed 1963 school taxes under protest and these are the only taxes at issue. Both parties agree that petitioner is entitled to have its real estate exempted from taxation, including school taxes, if the petitioner proves, first, that it is a corporation organized exclusively for charitable and educational purposes and, secondly, that it actually uses the real property in question exclusively in furthering or carrying out one or more of such purposes. The respondent claims that the petitioner does not meet either of these requirements and that, therefore, the realty, located in the Town of Peru, Clinton County, New York, is not exempt from local taxation. The respondent has denied the petitioner’s application for exemption.
On December 13, 1945, the petitioner was incorporated as a membership corporation of New York State. On May 25, 1950, the petitioner filed an extension of powers which gave it the authority “ to aid young men and women who are students at the State Teachers College at Plattsburgh, by assisting them in every possible way in their work, student living and extracurricular activities ”. On June 7, 1963, the petitioner acquired the above-captioned name after filing a certificate of change of name.
In addition to the above-cited powers, petitioner has the power to receive gifts, loans, bequests or funds donated to Plattsburgh State Teachers College and to transfer the principal and/or the income to: (a) the State Teachers College at Plattsburgh, or (b) the New York State Dormitory Authority, or (c) to any purpose in connection with the welfare of the students and faculty as either the donor or the association (petitioner) may see fit. As a guideline for the use of such funds, the corporate powers and purposes state that funds received are “ to be devoted to student scholarships, student loan funds, or other financial assistance to students, or such other purposes as may be of benefit to the students, the college in general, or the alumni association ”.
The Plattsburgh College Benevolent and Educational Association, Inc., herein called the petitioner, has its membership provisions set forth in the incorporating papers. The petitioner shall consist of not less than 11 nor more than 15 persons and of those, two persons shall be selected from the administrative staff of the college; two shall be members of the faculty; one shall be a member of the alumni association; one shall be a member of the board of visitors; and, apparently three shall be the student presidents of the house of delegates (a student organization comprised of the three upper classes). The college president is an ex officio member. There was no proof as to *743 the present proportion of faculty and administration to students or as to which group actually ran the association.
From a reading of the corporate purposes and powers, it appears that the petitioner has final power to determine the use of donated funds in the absence of the donor’s specific direction. Such power should be exercised within the guidelines above set forth but the last clause quoted, “ or such other purposes as may be of benefit to the students, college in general or the alumni association ”, allows a great deal of flexibility. It further appears that the petitioner has the exclusive power to determine what the ‘ ‘ welfare of the students and faculty ’ ’ demands in allocating funds. This phrase also introduces an element of flexibility which may be much needed by petitioner in meeting the needs of the students and faculty.
The certificate of incorporation clearly indicates that the petitioner is a self-governing membership corporation which is entitled to operate entirely independent of Plattsburgh State Teachers College. The petitioner is not an educational institution but rather functions as an auxiliary to an educational institution. This would seem to be the reason for the broadly drawn corporate purposes and powers.
Petitioner’s history bears out this conclusion. About 1951, when new residence halls and college unions were built at Plattsburgh and throughout New York State for the various teachers’ colleges, comprising the State University of New York, an agreement was reached between the Dormitory Authority, the titleholder, and the State University trustees to the effect that providing food and other services should be handled by the trustees or whomever they delegated. It could be operated by the trustees or it could be put up for bid. Plattsburgh undertook to form an independent membership corporation which, among other things, conducted a service of furnishing food to the students, At present this entails serving 21 meals a week throughout the student year of 35-36 weeks. The present enrollment approximates 1,900 students. Some 1,200 students are regularly served meals in addition to a la carte service in snack bars. The faculty, as well as the campus school children, also receive their meals through this service. The campus school is conducted at Plattsburgh and is used in connection with the teaching program.
The various services conducted by the association for the fiscal year ending June 30, 1963 showed the following net gains, or profits: food, $54,371.37; bookstore, $10,497.13; juke boxes, $518.35; vending machines, $2,175.50; operation of Court Street property for faculty, $246.19. The last profit derived from *744 the Nurses Educational Division, which is now being conducted by the State of New York, showed a profit of $20,048.49. The total cash balance of the association as of June 30, 1963 (the year the association purchased the Valcour property) from its various activities, was $85,608.28.
There has been no proof that petitioner has used its funds for scholarship purposes or student loans. No proof has been offered to establish that any service has been rendered to any student or faculty at or below cost.
Having presented the facts as to petitioner’s history, legal purposes and powers, and actual membership, the court now turns to the real estate. The realty in question is located at Valcour, Town of Peru, Clinton County, New York, and was referred to as the Heathcote Estate, Sibley Estate, Harbour Inn, etc., during the argument. Petitioner renamed it and calls it “Valcour Educational Conference Center”. It will be called the Valcour property in this opinion.
The Valcour real property and furnishings involved in this proceeding were purchased by the association from its cash profits in February, 1963, for a total sum of $98,350. The Valcour property is located about four to five miles south of the City of Plattsburgh. It consists of nine acres of land located between New York State Route No. 9 and the west shore of Lake Champlain. The only alterations to the main building by the association were the replacement of windows, painting, and the removal of a bar, all of which cost $640.13. The main building provides space for lectures and conferences as well as sleeping quarters. The association repaired the beach at a cost of $637 and the boathouse for $740. During the Summer of 1963, the association allowed the faculty and their families beach, swimming and recreational privileges and permitted the boathouse, at the time of the trial, to be used to store boats owned by the faculty.
The petitioner has offered proof that the Valcour property has been used at times for teachers’ conferences, student meetings and by the alumni. Proof also shows that the property has been used by some of the faculty and some of the students for purposes more accurately classified as recreational.
The proof also shows that the Valcour property is not open to use by all the faculty, students or alumni but that only those who secure prior permission from the college president’s office. It further appears that certain nearby residents are allowed to use the Valcour facilities. The petitioner has not proven what criteria the president’s office employs in deciding which professor, student, alumnus, or nearby resident shall be *745 allowed to use the Valcour property. The petitioner has not established the relationship between the felt need for screening and the furtherance of educational and charitable purposes.
This relationship becomes important in light of the petitioner’s explanation of its purchase of the Valcour property. The petitioner contends that it decided to use its profits from the food service, the bookstore, the juke boxes, the vending machines and the rental of other realty to buy the Valcour realty because, in its judgment, the welfare of the students and faculty required an off-campus location away from telephones in an atmosphere conducive to relaxation and unhurried meditation on educational problems. If the screening criteria were set up to congregate only persons interested in the same or related fields, then, perhaps petitioner could justify this procedure as to faculty, students and even alumni.
The evidence provided at argument thus indicates that the petitioner has broad powers and purposes which fit it for a much needed role as an auxiliary to Plattsburgh State Teachers College. The facts show that petitioner has so operated in the past and that the Valcour property has actually been used as a recreational area for some of the faculty, students and nearby residents.
The questions before this court are, first, does the breadth of petitioner’s purpose and powers take it without section 420 and, second, has petitioner forfeited its claim to tax exemption through its use of the Valcour property.
The pertinent parts of section 420 of the Real Property Tax Law, provide as follows:
“ § 420. Non-profit organizations
‘ ‘ 1. Real property owned by a corporation or association organized exclusively for * * * charitable, benevolent, * * * educational * * * purposes, * * * or for two or more of such purposes * * * and used exclusively for carrying out thereupon one or more of such purposes * * * by the owning corporation or association * * * shall be exempt from taxation as provided in this section. Such real property shall not be exempt * * * if it be not in good faith organized or conducted exclusively for one or more of such purposes.
“2. If any portion of such real property is not so used exclusively to carry out thereupon one or more of such purposes but is leased or otherwise used for other purposes, such portion shall be subject to taxation and the remaining portion only shall be exempt; provided, however, that such real property shall be fully exempt from taxation although it or a portion thereof *746 is used (a) for ” purposes of section 422 and under the tax exemption conditions therein set forth.
The double test for tax exemption is set forth in section 420 (subd. 1). It first requires that the corporation be organized exclusively for one or more of the permitted purposes, here charitable, benevolent or educational. The section, secondly, requires that the corporation actually and in good faith use the realty exclusively for one or more of the exempt purposes. If the real estate in question is not so used exclusively, it shall be taxed unless petitioner can prove the realty is used ‘ ‘ exclusively to provide housing and auxiliary facilities for faculty members, students, employees * * * and their immediate families in attendance or employed at colleges, universities, educational institutions, hospitals and medical research institutes ” (Beal Property Tax Law, § 422) and otherwise meet the requirements of said section 422.
No proof was offered on the issue of whether petitioner was organized pursuant to the provisions of the Private Housing Finance Law (art. 2). It seems unnecessary to consider it, however, because the Valcour realty was not to have been acquired for or used for faculty or student housing or such auxiliary facilities as normally accompany a housing project, i.e., laundries, shopping areas or beauty parlors. The fact that this section exists indicates that otherwise qualifying corporations may not provide student or faculty housing and still retain their character as exclusively educational unless they meet strict tests. In turn, this suggests that the exclusivity test is and has been applied very strictly.
The exclusivity test would seem designed to resolve the conflict between the policy of having all realty bear an equal share of the cost of public services and the policy of encouraging and fostering certain corporations and associations which are considered to bestow on the public a greater benefit, the advancement of man’s knowledge, and the secular and religious education of future citizens (People ex rel. Seminary v. Barber, 42 Hun 27, affd. 106 N. Y. 669; People ex rel. Watchtower Bible & Tract Soc. v. Haring, 8 N Y 2d 350; Faculty-Student Assn. of N. Y. S. College for Teachers v. City of Albany, 17 Misc 2d 404; Williams Inst. C. M. E. Church v. City of New York, 275 App. Div. 311, 313).
The court is aware that it should not construe the statute so literally as to defeat the established purpose of fostering educational purposes (People ex rel. Watchtower Soc. v. Haring, supra), but it is also aware that the petitioner has the burden *747 of establishing that it is so organized and conducted as to justify the granting of this exemption.
The cases indicate that the exclusivity test has been strictly applied when the powers and purposes of the corporation are questioned (Matter of Great Neck Section, Nat. Council of Jewish Women v. Board of Assessors, 21 Misc 2d 142; American-Russian Aid Assn. v. City of Glen Cove, 41 Misc 2d 622). It has recently been held that the right of a corporation to exemption must be determined solely from its powers and purposes and if any of them exceed those mentioned in section 420 of the Real Property Tax Law, the exemption may not be granted (Matter of Great Neck Section, Nat. Council of Jewish Women v. Board of Assessors, supra). The Court of Appeals has looked for the primary or inherent purpose of the organization but still construed any ambiguities against the petitioner to prevent exemptions from being granted without some guarantee of public benefit (People ex rel. Mizpah Lodge v. Burke, 228 N. Y. 245; People ex rel. Clarkson Mem. Coll. v. Haggett, 191 Misc. 621, affd. 274 App. Div. 732, affd. 300 N. Y. 595).
The latter test of primary purpose introduced an element of flexibility into the law and makes possible an intelligent compromise between the two policies existing in this area. The need for university housing, for an efficient central food service, for recreational facilities on or near the campus are among the real and sometimes pressing problems of modern educational institutions. It may well be that petitioner needed the broad powers in its charter to meet these problems although the evidence did not prove this contention.
Running counter to these needs, however, is the equally pressing need for tax money. The precedents indicate that the courts resolve the conflict by allowing a corporation or association which is unquestionably organized primarily to disseminate knowledge or to support research, to own and operate on- and off-campus housing (People ex rel. Clarkson Mem. Coll. v. Haggett, supra; Matter of Pace Coll. v. Boyland, 4 N Y 2d 528), to operate businesses connected to their primary purpose which yield a small and incidental profit (People ex rel. Watchtower Soc. v. Haring, supra), and to maintain and own athletic fields and recreational areas for students and faculty (People ex rel. Adelphi Coll. v. Wells, 97 App. Div. 312, affd. 180 N. Y. 534; People ex rel. Bd. of Trustees of Mt. Pleasant Academy v. Mezger, 98 App. Div. 237, affd. 181 N. Y. 511). In so holding, the courts have recognized the modern needs of educational institutions or corporations organized exclusively for educational purposes.
*748 In some cases, the result is reached on some sort of de minimis reasoning (see People ex rel. Watchtower Soc. v. Haring, 8 N Y 2d 350, supra), and, in others, on a broadening of the term “ educational ” (see People ex rel. Bd. of Trustees of Mt. Pleasant Academy v. Metzger, supra; People ex rel. Adelphi Coll. v. Wells, supra). In all cases, the corporation or association is primarily-engaged in one or more of the permitted activities.
The petitioner, in the instant matter, is not a duly chartered educational institution or under the legal control of such an organization. Where such is not the case, the mere fact that the petitioner’s members and officers are exclusively students, faculty and administration; or that petitioner is organized to provide food, lodgings and recreational facilities exclusively for the faculty and students of an established educational institution does not qualify petitioner for tax exemption of its realty (Plattsburgh State Teachers Coll. Benevolent & Educ. Assn. v. Barnard, 9 Misc 2d 897; Faculty-Student Assn. v. City of Albany, 17 Misc 2d 404, supra).
In the above Plattsburgh State Teachers Coll. Benevolent & Educ. Assn. case, the court held that purposes and powers identical to those here at issue were not exclusively educational or benevolent as intended by section 420 of the Beal Property Tax Law. In the above Faculty-Student Assn. case, another autonomous student-faculty membership corporation was denied tax exemption because its powers and purposes which were claimed to be exclusively educational and benevolent were held to bear no primary or exclusive relationship to the educational process. The first case involved student and faculty housing, and the second case above cited involved a petitioner who, in addition to housing, conducted a student loan fund, a bookstore, cafeteria and snack bar on the main campus. Both were denied tax exemption for engaging in activities which are analytically similar to those conducted by Clarkson College, Adelphi College, and the Watchtower Bible and Tract Society without loss of exemption, the functions of which corporations clearly bear an exclusive relationship to educational or religious purposes.
The courts have been unwilling to grant tax exemption to an auxiliary, autonomous membership corporation which was organized to provide food, lodgings, loans, alumni directories, and recreational and hospital facilities exclusively to students and faculty. The reason is that such activities and the associations and corporations organized to provide them do not bear a primary or exclusive relationship to the educational processes. This is not to say that such services are not valuable to the students and faculty but only that they are secondary to the *749 accumulation and imparting of knowledge and that the tax exemption was intended to favor only those corporations performing the latter functions.
From a broader perspective, these precedents mean that courts have decided that the benefit accruing to the public through the existence of a corporation organized to perform these auxiliary functions does not outweigh the public need for money to operate the government and supply public services.
The facts establish that the petitioner falls into that class of corporations or associations formed to supply services and facilities and that, therefore it is not organized exclusively for charitable, educational, or benevolent purposes within the meaning of section 420 of the Real Property Tax Law as construed by the courts.
Since it is possible that the petitioner might so use the Valcour property as to merit a tax exemption, the actual use of the realty should be considered (Matter of Corporation of Yaddo v. City of Saratoga, 216 App. Div. 1; People ex rel. Provident Loan Soc. v. Chambers, 196 Misc. 367, 383, revd. 276 App. Div. 755, 757, affd. 301 N. Y. 575; People ex rel. Manlius School v. Adams, 143 Misc. 459, 466, affd. 232 App. Div. 869, affd. 257 N. Y. 549). As previously stated, the petitioner must prove not only that it was organized exclusively for educational, benevolent, or charitable purposes but also that the realty has actually been used exclusively for said purposes.
The cases indicate that “ exclusively ” used in this clause means the same as before, that is the primary use of the realty must be in furtherance of the permitted purposes and an occasional minor deviation does not result in taxability (Syracuse Center of Jehovah’s Witnesses v. City of Syracuse, 163 Misc. 535; People ex rel. Watchtower Soc. v. Haring, 8 N Y 2d 350, supra; People ex rel. Provident Loan Soc. v. Chambers, supra). An occasional use for educational, benevolent or charitable purposes, however will not suffice (People ex rel. Delta Kappa Epsilon Soc. v. Lawler, 74 App. Div. 553, 557; Matter of Mt. Tabor Lodge v. Nordstrom, 283 App. Div. 199; Good Will Club v. City of Amsterdam, 31 Misc 2d 1096).
Petitioner has proven that there are facilities for lectures, seminars, symposiums and other activity traditionally associated with the educational processes. There is proof that some were conducted here. Petitioner has also proven that the Valcour property has excellent facilities for recreation and that some of the students, faculty, administration and neighbors have used it for same. Petitioner has not proven that the Valcour property was intended to supplement the existing physical education *750 facilities at the college or that it has been so used. The strongest logical deduction from the proof indicates that, on the contrary, petitioner has used the Valcour property as a haven for those students and faculty approved by the president’s office.
Petitioner has proven no charitable or benevolent use of the property sufficient to meet the legal tests of same (see Webster Apts. v. City of New York, 118 Misc. 91, 93, affd. 206 App. Div. 749; National Navy Club v. City of New York, 122 Misc. 89, 94; People ex rel. Alumnae Assn. Mt. Sinai Hosp. School of Nursing v. Rizzardi, 273 App. Div. 1024).
According to petitioner’s evidence, the Valcour property was purchased to provide a tranquil off-campus location for unhurried meditation on educational problems. Petitioner bases its claim for tax exemption on these meditations and occasional discussions. Petitioner asks the court to regard these activities as the primary use and to regard the beach, swimming, boating and other recreational activities available to the approved faculty and students and noncollege personnel as merely secondary.
The court finds exactly the opposite to be true. The facts and common sense indicate that the Valcour property has been used primarily as a recreational area for some faculty, students and others. Because this recreation has not been proven to be an adjunct of the college’s athletic program and because of the unexplained need for permission to use, the court is compelled by precedent to find that the actual use of the property has not been exclusively educational as required by the statute.
The court recognized that “ fringe benefits ” may be necessary to keep capable faculty and administration at a college and that their presence confers the type of benefit on the public which the statute purports to encourage. The court is also aware that faculty residences in which the quantity of discussions and meditations about educational problems must at least equal that which takes place at the Valcour property bear their share of the tax burden. The precedents indicate that tax exemption is to be granted only when the actual primary use of the realty involves activities directly associated with the educational process, teaching research, or physical training and, recently, boarding and lodging. On the facts proven, this court is unwilling to attempt an extension of the principles behind section 420.
To restate, the petitioner is denied tax exemption because it has failed to prove that it is organized exclusively for educational, benevolent, or charitable purposes and that it actually uses the Valcour property exclusively for the aforesaid purposes. The court holds that a corporation which is not controlled by a bona fide educational institution but is autonomous and *751 exists primarily to provide services, food and lodging for faculty and students is not organized exclusively for educational purposes because such services bear no primary or exclusive relationship to the educational process. As a second and alternative ground for its decision, the court holds that realty used under the circumstances described herein is not used exclusively for educational purposes because such use bears no primary or exclusive relationship to the educational process.