UNEMPLOYMENT COMPENSATION COMMISSION *v.*
UNIONVILLE MILLING CO.

1. STATUTES—ATTEMPT TO AMEND—CONSTRUCTION.

Attempt in the legislature to amend a statute followed by failure to do so *held,* not of controlling value under the circumstances, in construing frequently amended statute.

2. SAME—FEDERAL DEPARTMENT RULING—CONSTRUCTION.

In considering application of section of unemployment compensation act relative to agricultural labor to bean pickers, a Federal department's ruling as to a definition of a Federal statute similar in wording to present form of the State statute *held,* not controlling under the circumstances (Act No. 1, § 42 [7] [d], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 18, Pub. Acts 1942 [2d Ex. Sess.]).

3. UNEMPLOYMENT COMPENSATION—COMMERCIAL ELEVATORS—AGRICULTURAL LABOR—BEAN PICKERS.

Commercial elevator operator which dealt in farm commodities but which was not a terminal market was exempt from unemployment compensation tax on remuneration paid individuals

picking beans as they were engaged in "agricultural labor" as that term is defined by certain amendments of pertinent statute where such process is required by the State and United States departments of agriculture in order to prepare the beans for market (Act No. 1, § 42 [7] [d], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 18, Pub. Acts 1942 [2d Ex. Sess.]).

4. COSTS—CONSTRUCTION OF STATUTES—PUBLIC QUESTION—BEAN PICKERS—AGRICULTURAL LABOR.

No costs are allowed in suit for determination as to whether or not bean pickers working for a commercial elevator operator were performing "agricultural labor" as that term is defined in the unemployment compensation act, a public question being involved (Act No. 1, § 42 [7] [d], Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 18, Pub. Acts 1942 [2d Ex. Sess.]).

Appeal from Tuscola; Des Jardins (George W.), J. Submitted October 10, 1945. (Docket No. 23, Calendar No. 43,129.) Decided January 7, 1946.

Bill by Michigan Unemployment Compensation Commission against Unionville Milling Company, a Michigan corporation, for a declaratory decree determining that bean pickers are not agricultural laborers within the meaning of section 42, subd. (7) (d), of the unemployment compensation act, as amended by Act No. 18, Pub. Acts 1942 (2d Ex. Sess.). Decree for defendant. Plaintiff appeals. Affirmed.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *Florence Clement Booth,* Assistants Attorney General, for plaintiff.

*William P. Smith (Lloyd T. Crane,* of counsel), for defendant.

REID, J. Plaintiff Michigan unemployment compensation commission filed its petition for a declaratory decree to obtain judicial determination of the

meaning of the term "agricultural labor" as used in section 42 (7) (d) of the Michigan unemployment compensation act (Act No. 1, Pub. Acts 1936 [Ex. Sess.], as amended by Act No. 347, Pub. Acts 1937, and Act No. 324, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 8485–41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*] [later amended by Act No. 364, Pub. Acts 1941, Act No. 18, Pub. Acts 1942 (2d Ex. Sess.), and Act No. 246, Pub. Acts 1943 (Comp. Laws Supp. 1943, § 8485–41 *et seq.,* Stat. Ann. 1943 Cum. Supp. § 17.501 *et seq.*)]) to settle an existing controversy between plaintiff commission and defendant Unionville Milling Company as to whether certain individuals, referred to as "bean pickers," employed by the defendant company in the processing of dry edible beans were engaged in agricultural labor within the meaning of the 1942 amendment to said act.

Plaintiff claims that services rendered in sorting and grading dry edible beans do not constitute agricultural labor within the meaning of section 42 (7) (d) [which appears without change in amendatory Act No. 246, Pub. Acts 1943, as section 42 (6) (d)] if performed after the beans have been sold by the grower to the elevator. Defendant controverts that claim. From decree for defendant, plaintiff appeals.

Defendant Unionville Milling Company, a Michigan corporation having its principal place of business in Unionville, Tuscola county, operates commercial elevators and deals in farm commodities. It employs individuals in processing of dry edible beans and other farm produce in its commercial elevators.

Defendant buys beans in field run condition as the produce is taken from the fields. The beans are sorted and graded at defendant's bean elevator in accordance with the requirements of the department

of agriculture of the State of Michigan for sale of the produce by persons other than the grower. Defendant employs individuals to remove culls, stones and foreign matter from the produce as it passes before them on a conveyor belt in the company's warehouse or elevator. In the bean industry, individuals so employed in the commercial processing of the beans are referred to as "bean pickers."

When a farmer brings his beans to defendant's elevator, defendant draws a sample thereof to determine the percentage of culls and other waste material which the beans contain, and, whether the beans are then purchased from the farmer or accepted for storage for the account of the farmer, a so-called "scale ticket" is issued to him by defendant, showing the (estimated) quantity of choice handpicked beans included in the lot. If the beans are purchased, the charge for picking out the culls and other waste material is deducted from the price to be paid the farmer, and he is then paid the prevailing market price for the estimated amount of choice handpicked beans, although the beans at this point have not yet been processed by the "bean pickers." If the beans are received for storage for the account of the farmer, the same procedure is followed, except that the beans are processed and the remaining choice handpicked beans are commingled in defendant's elevator with other choice handpicked beans, and such commingled choice handpicked beans are subsequently either sold or returned to the farmer, when and as he directs. Under either method, the farmer is always paid for his beans on the basis of choice handpicked quality.

The operation performed by the "bean pickers" in no way changes the chemical or physical condition of the beans; the result of the operation is merely to clean the beans into the condition required by the

regulations of the United States department of agriculture and the Michigan State department of agriculture before they can enter into distribution for consumption. The beans cannot be shipped in State or interstate commerce without being processed to the grades required by the aforementioned government agencies, and the operations performed by the "bean pickers" are a necessary part of the processing.

It is conceded that defendant's elevator is not a "terminal market."

Defendant claims that the services performed in the processing of the beans are performed as an incident to the preparation of the beans for market and prior to the delivery of same to a terminal market for distribution for consumption.

Defendant further claims that the intent of the legislature to exempt "agricultural labor" is confirmed by: (1) the change in the statutory language; (2) the adoption by the State legislature of the Federal definition of "agricultural labor" and the circumstances surrounding this action; and (3) failure of the subsequent attempt to amend the statute to accord with plaintiff's interpretation.

We do not deem that the attempt in the legislature to amend the statute followed by failure to amend can be considered as of controlling value in the instant case.

However, we note the form of the statute as it existed prior to the adoption of the 1942 amendment of the statute, and have in mind the effect of the decision in *Minor Walton Bean Co.* v. *Unemployment Compensation Commission,* 308 Mich. 636. In that case the employment of claimant was terminated in March, 1941. Later in that same year she filed claim for benefits for unemployment compensation under the State act. Clearly her claim was gov-

erned by the provisions of the act prior to the amendment effective February 27, 1942. During the period of her employment the pertinent portion of the act involved (as recited in the majority opinion in that case) was section 42 (7) (d):

"(7) The term 'employment' shall not include:
\* \* \*

"(d) Labor performed on a farm by an employee of the owner or tenant of the farm in connection with the cultivation of the soil and harvesting of crops or the raising and feeding of live-stock, bees, and poultry, or in connection with the packing, packaging, transportation or marketing of these materials or articles when carried on as an incident to ordinary farming operations."

We do not change the effect of the majority opinion in the *Minor Walton Bean Company Case, supra,* which case is applicable to employment prior to February 27, 1942.

Act No. 18, Pub. Acts 1942 (2d Ex. Sess.), effective February 27, 1942, amended the section in question (section 42 [7] [d]) to read as follows:

"The term 'agricultural labor' includes all service performed:   \* \* \*

"(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its

delivery to a terminal market for distribution for consumption.''

In the minority opinion in the *Minor Walton Bean Company Case, supra,* it is recited at p. 640:

''Section 4 of the 1936 act authorized defendant commission 'to promulgate such rules and regulations, and take such other action as it deems necessary, not inconsistent with the provisions of this act, to carry out the provisions of this act.' In an opinion in April, 1940, defendant commission stated its administrative definition of the term 'agricultural labor' in part as follows:''

Thereupon is cited a definition published by the commission (plaintiff in the instant case) in form identical with the language in the amendment effective February 27, 1942, Act No. 18, Pub. Acts 1942 (2d Ex. Sess.).

The majority opinion in the *Minor Walton Bean Company Case, supra,* recites at p. 653:

''The status of the employee of the elevator company is to be determined as of 1940 under the provisions of Act No. 1, Pub. Acts 1936 (Ex. Sess.), as amended by Act No. 324, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 8485–41 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 17.501 *et seq.*), effective June 22, 1939, wholly unaffected by subsequent legislative amendment, Federal statute or Federal departmental or *bureau holding.*'' (Italics supplied.)

It will be seen that the majority opinion in that case determined to be ineffectual the administrative definition made by the defendant commission in that case (plaintiff in the instant case) so far at least as concerned labor performed prior to the effective date of the amendment of 1942. That administrative definition had at the time of the decision of the *Minor Walton Bean Company Case* already been en-

acted into law by the 1942 amendment, but that amendment could control only as to labor performed after the effective date of the amendment, February 27, 1942, and therefore was of no effect as to services under consideration in· the *Minor Walton Bean Company Case,* which services were performed before February 27, 1942.

In the instant case, we also consider as not of controlling value a Federal department's ruling as to a definition of a Federal statute similar in wording to the present form of the Michigan statute.

The regulation by the Michigan State department of agriculture requiring that dry edible beans shall not be placed in trade channels for distribution for consumption without processing in effect requires the process called "picking" before marketing. In the instant case the beans are received at defendant's elevator on an arrangement that the beans be there processed or "picked" before being otherwise disposed of. The processing thus required includes services which constitute "agricultural labor" within the meaning of the statute, section 42 (7) (d) [which appears without change in amendatory Act No. 246, Pub. Acts 1943, as section 42 (6) (d)] of the Michigan unemployment compensation act. See, also, *In re Lazarus,* 294 N. Y. 613 (64 N. E. [2d] 169).

Defendant Unionville Milling Company is exempt from the Michigan unemployment compensation tax on remuneration paid individuals performing services as "bean .pickers" on and after February 27, 1942. The determination of liability rendered by the plaintiff Michigan unemployment compensation commission to the defendant Unionville Milling Company, dated January 22, 1943, is invalid and erroneous and shall be and hereby is set aside, and held for naught, as being contrary to the express terms and provisions of section 42 (7) (d) aforesaid

(which appears without change in amendatory Act No. 246, Pub. Acts 1943, as section 42 [6] [d]).

Under the statute of this State prior to February 27, 1942, "bean pickers" were not considered "agricultural laborers." Since February 27, 1942, under the statute of this State, "bean pickers" are to be considered as "agricultural laborers."

The decree, being of the foregoing import, is affirmed. No costs are awarded, a public question being involved.

BUTZEL, C. J., and CARR, SHARPE, and BOYLES, JJ., concurred with REID, J. BUSHNELL, NORTH, and STARR, JJ., concurred in the result.