Argued October 27, affirmed December 24, 1958

# ROBERTS *v.* STATE UNEMPLOYMENT COMPENSATION COMMISSION

332 P. 2d 1067

*Joe P. French*, Pendleton, argued the cause for appellant. With him on the brief was Ralph Currin, Pendleton.

*E. Nordyke*, Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Roland V. Brown and Harry G. Spencer, Assistant Attorney Generals, Salem.

Before Perry, Chief Justice, Warner, McAllister, Sloan and O'Connell, Justices.

McALLISTER, J.

This is an action filed in the circuit court by the plaintiff, Jacob E. Roberts, for a judicial review of an order of the defendant, State Unemployment Compensation Commission, denying his claim for benefits under the unemployment compensation law. This review proceeding is authorized by ORS 657.285. The circuit court affirmed the order of the commission and the plaintiff has appealed. We will refer to the

defendant as the "commission" and the unemployment compensation law as "the act."

The findings of the commission as to the facts have not been challenged by the plaintiff and are binding on us. (ORS 657.285 (5) ). During the fruit harvesting season of 1955, plaintiff was employed for about three months in the packing house of Mojonnier & Sons, Inc. at Milton-Freewater. The employer performed services in sorting, grading, packing, and delivering to market or to a carrier for transportation to market various fruits grown in the area. The employer performed such services for the farmers on a commission basis. Title to the fruit was retained by the farmers until the fruit reached its terminal market.

Plaintiff worked in the packing house at a variety of jobs. He was hired to handle fruit boxes but worked on a sorting and grading machine; unloaded farmers' trucks; loaded fruit on trucks and freight cars for shipment to market; repaired equipment; and worked as a handyman.

The only question posed by this case is whether the work performed by plaintiff for his employer was agricultural labor as defined in the act. The answer to the question is made clear by a brief review of the legislative history of our act and the related federal statutes. The federal unemployment insurance program originated with the Social Security Act of 1935, 49 Stat 620, Public No. 271, 74th Congress, approved August 14, 1935. Our act originated in Oregon Laws 1935, special session, ch 70. The definition of employment in both acts excepted agricultural labor but neither defined the term.

The federal agencies experienced considerable difficulty with this general exclusion of agricultural

labor and the courts disagreed as to its meaning.[1] See the extensive annotation on this subject in 53 ALR2d 406.

Our commission experienced similar difficulty and the problem was the subject of litigation in the lower courts. See Ops. of Atty Gen. 1934-36, p 771 and 1938-40, p 664 where reference is made to the case of *Pinnacle Packing Company, Inc. et al. v. State Unemployment Compensation Commission et al.,* in which the circuit court held that the packing of fruit in a commercial packing house was not agricultural labor.

In 1939 our legislature attempted to solve the problem by amending our act to include a definition of agricultural labor. See Oregon Laws 1939, ch 515. That definition did not entirely solve the problem, particularly as applied to the preparation of fruits and vegetables for market by commercial packing houses. See Ops. of Atty Gen 1938-40, p 664.

In 1939 Congress amended the federal act to include a comprehensive definition of agricultural labor. See Social Security Amendments of 1939, 53 Stat 1360, Public No. 379, 76th Congress, approved August 10, 1939. This definition, without material change, is now included in the Internal Revenue Code of 1954 as ch 23, Federal Unemployment Tax Act, § 3306 (k) (4). A large number of states, including Oregon, promptly adopted this definition. As incorporated verbatim into our act by Oregon Laws 1941, ch 248, p 775, the pertinent portions thereof read as follows:

"(F) The term 'employment' shall not include:
"(1) Agricultural labor. On and after Janu-

[1] "The exclusion of agricultural labor, on the other hand, has probably been, next only after the delineation of the employment relationship itself, the most difficult and troublesome of all the boundaries of unemployment compensation coverage." Wilcox, The Coverage of Unemployment Compensation Laws, Vol. 8 Vanderbilt Law Review 276.

ary 1, 1941, the term 'agricultural labor' includes all services performed;

"* * * * * *

"(d) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; but only if such service is performed as an incident to ordinary farming operations *or, in the case of fruits and vegetables,* as an incident to the preparation of such fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption." (Italics supplied)

■ In adopting the above definition, Congress intended to include as agricultural labor work performed in a commercial packing house in the preparation of fruits and vegetables for market. See Sen Rep 734, 76th Cong 1st Sess, p 61 and House Rep 728, 76th Cong 1st Sess, p 51. We quote from House Report 728, p 53:

"In the case of fruits and vegetables, however, whether or not of a perishable nature, services performed in the handling, drying, packing, etc., of those commodities constitute 'agricultural labor' even though not performed as an incident to ordinary farming operations, provided they are rendered as an incident to the preparation of such fruits or vegetables for market. Under this portion of the paragraph, for example, services performed in the sorting or grading of citrus fruits or in the cleaning of beans, as an incident to their preparation for market, will be excepted irrespective of whether performed in the employ of a farmer,

a farmers' cooperative, *or a commercial handler of such commodities."* (Italics supplied)

In adopting the federal definition, our legislature had a like intent. The federal definition of agricultural labor was retained in our act without change until 1957 when an amendment not material to this case was made. See Oregon Laws 1957, ch 395. The commission properly found that the work performed by plaintiff was agricultural labor as defined in our act.

Plaintiff concedes that the work performed by him was agricultural labor unless the packing house in which he was employed was a terminal market. Plaintiff points out that the agricultural exemption does not apply to "any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption," and relies primarily on *Miller v. Burger,* 161 F2d 992; *Miller v. Bettencourt,* 161 F2d 995; and *Ewing v. McLean,* 189 F2d 887.

In the cases relied on by plaintiff, the farmers sold their fruits or vegetables to the packing house and retained no further economic interest therein. In those cases it was held that the packing house was the farmer's terminal market. In cases involving similar facts, other courts have arrived at a contrary conclusion. See *Michigan Unemp. Comp. Com'n v. Unionville Milling Co.,* 313 Mich 292, 21 NW2d 135; *Michigan Unemployment Comp. Com'n v. Appeal Board,* 332 Mich 194, 50 NW2d 755; *Chester B. Brown Co. v. Employment Security Agency,* 78 Idaho 166, 299 P2d 487; and *Chester B. Brown Co. v. United States,* 152 F. Supp 803.

■ In the case at bar the commission found that title to the fruit was retained by the farmers. In this case, Mojonnier & Sons, Inc. was engaged in the preparation

of the fruit for later sale by the farmers or for the account of the farmers at some market, the location and nature of which is not disclosed by the record. All the courts seem agreed that under the circumstances existing in this case, the packing house would not be a terminal market.

Affirmed.