WOOLLEY v. MICHIGAN ELEVATOR EXCHANGE.

1. UNEMPLOYMENT COMPENSATION—AGRICULTURAL LABOR—PRODUCTION SUPERINTENDENT—MAINTENANCE MAN AT BEAN ELEVATOR.

Employee of corporation, engaged in business of buying, storing, processing, packaging, and shipping beans, whose duties as production superintendent included maintenance of machinery and hiring and supervision of personnel *held*, not engaged in *agricultural labor* excluded from employment for lack of which unemployment compensation benefits were payable (CLS 1956, § 421.42, as amended by PA 1957, No 311).

2. COSTS—CONSTRUCTION OF STATUTES—UNEMPLOYMENT COMPENSATION.

No costs are allowed on appeal in proceedings to obtain unemployment compensation, a question of statutory construction being involved (CLS 1956, § 421.42, as amended by PA 1957, No 311).

REFERENCES FOR POINTS IN HEADNOTES

[1] 48 Am Jur, Social Security, Unemployment Insurance, and Retirement Funds § 30.
    What constitutes "agricultural" or "farm" labor within social security or unemployment compensation acts. 53 ALR2d 406.
[2] 14 Am Jur, Costs §§ 91, 106.

Appeal from St. Clair; Streeter (Halford I.), J. Submitted January 11, 1963. (Docket No. 37, Calendar No. 49,461.)    Decided September 4, 1963.

Harold Woolley presented his claim against the Michigan Elevator Exchange, a Michigan corporation, for unemployment compensation. Claim denied by Michigan Employment Security Commission and its appeal board. On certiorari plaintiff granted unemployment benefits. Defendant Michigan Employment Security Commission appeals. Affirmed.

*Albert E. Taylor,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *E. J. Setlock,* Assistant Attorney General, for the defendant Michigan Employment Security Commission.

SMITH, J. Plaintiff-appellee, subsequent to the termination of his employment with the Michigan Elevator Exchange, filed a claim for unemployment benefits with defendant-appellant, Michigan employment security commission. Upon original determination made July 16, 1957, the claim was denied upon grounds that claimant's services for the elevator exchange constituted "agricultural labor", within the provisions of section 42 (7) of the Michigan employment security act (CLS 1956, § 421.42, as amended by PA 1957, No 311 [Stat Ann 1960 Rev § 17.545]), and were thus exempt from coverage under the act. Denial of the claim was affirmed on subsequent appeal to the appeal board. Upon review by certiorari, the trial court reversed the decision of the appeal board and held that "Under no reasonable theory could it be said that the act was intended to exclude his services." Defendant commission appeals from this order.

Plaintiff was employed by the elevator exchange for approximately 25 years prior to the time of his discharge. During the last 12 years of his employment, he served in position of "production superintendent" including maintenance of machinery duties. During the bean-processing season, September to April, he was in charge of that section of the exchange where electric-eye sorting machines "process" beans by removing rocks, culls, splits and other undesirable materials. In this section, he did the hiring and supervising of personnel and, personally, kept the machines in repair. In the off-season, he devoted full time to cleaning and reconditioning the machines.

Michigan Elevator Exchange, a Michigan corporation, is engaged in the business of buying, storing, processing, packaging, and shipping beans. These beans are delivered from various country elevators and from bean farmers. After beans are processed and graded, a portion is bagged into 100-pound bags for sale to canners and wholesale grocers, and the balance is hauled to the employer's packing plant, where they are packaged into 1-, 2-, and 4-pound packages. The employer's customers (wholesalers, canners, and brokers) are mostly located in the eastern part of the United States.

The question is one of statutory interpretation. Section 42 (7) (d) (4) of the employment security act reads as follows:

"Sec. 42. * * * (7) Except as otherwise provided in subsection (8) of this section the term 'employment' shall not include: * * *

"(d) 'Agricultural labor' which shall comprise all service performed: * * *

"(4) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horti-

cultural commodity; *but only if such service is performed as an incident to ordinary farming operations* or, in the case of fruits and vegetables, as an incident to the preparation of fruits or vegetables for market. The provisions of this paragraph shall not be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption." (Emphasis supplied.)

This section of the statute was construed in *Unemployment Compensation Commission* v. *Unionville Milling Co.,* 313 Mich. 292. The question in that case was whether or not "bean pickers" performed agricultural labor* within the meaning of the section of the statute with which we are now concerned. In that case bean pickers were described as employees whose job it was "to remove culls, stones and foreign matter from the produce as it passes before them on a conveyor belt in the company's warehouse or elevator." This Court held (p 300) that: "Under the statute* of this State prior to February 27, 1942, 'bean pickers' were not considered 'agricultural laborers.' Since February 27, 1942, under the statute of this State, 'bean pickers' are to be considered as 'agricultural laborers.'" Thus there can be no question that under the prior decisions of this Court bean pickers are excepted. But is plaintiff in the instant case a bean picker? The answer seems plain, that he is not. The question arises then whether under any reasonable construction of the statute his services could be termed "agricultural labor."

We are in substantial agreement with the opinion of the trial court wherein Judge Streeter noted the following:

---

* Reference is to PA 1942 (2d Ex Sess), No 18, amending section 42 of the employment security act to incorporate the wording in subdivision (7) (d), which has remained unchanged.—REPORTER.

"The defendant-employer claims that his services were excluded under the theory that Mr. Woolley was performing agricultural labor and that all work done at its elevator would be excluded, except the clerical work. This interpretation is unreasonable and stretches our language beyond all ordinary meaning and beyond all common sense."

We cannot say that his job was "agricultural labor" within the meaning of the statute any more than that of the clerical help in the exchange, who concededly are not excepted. His job was characterized as that of "production superintendent." His duties were nonseasonal, whereas a characteristic of agricultural labor is that it is seasonal. He was a supervisor and a mechanic in a large commercial establishment. His special training was in machine operation and repair. We agree with the findings of the circuit judge that under no reasonable construction of the act could his duties be termed "agricultural labor".

Affirmed. No costs, a question of statutory construction being involved.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, and O'HARA, JJ., concurred.

BLACK, J., did not sit.