Argued May 31, reversed July 7, petition for rehearing denied
August 8, petition for review denied November 21, 1972

# HOLMES, *Respondent, v.* MORGAN, *Appellant.*

498 P2d 830

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Sidney A. Brockley,* Oregon City, argued the cause for respondent. With him on the brief were Jack, Goodwin & Urbigkeit, Oregon City.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

THORNTON, J.

This is an appeal by the Administrator of the Employment Division and a claimant for unemployment insurance from a judgment order of the circuit court for Clackamas County reversing and setting aside an Employment Appeals Board order in favor of claimant. The Appeals Board ruled that all services performed by claimant were covered by the Unemployment Compensation Law.

The central issue before us is whether the trial judge erred in holding that the work in which claimant was engaged was exempt from the Unemployment Compensation Law as agricultural labor under former ORS 657.045(2)(d).[1]

Cliff Holmes, the employer, is engaged in the business of processing and selling frying chickens under the assumed business name of Bigger and Better Poultry. Claimant's work consisted of eviscerating, cutting up and packaging frying chickens. The essential facts are as follows: Employer buys eggs and delivers them to a commercial hatchery for hatching. The hatchery then delivers the chicks to growers under contract with employer. The growers raise the chicks until they are eight to nine weeks old. Contract haulers then deliver the chicks to employer's process-

---

[1] ORS 657.045(2)(d) provides:

"(2) 'Agricultural labor' includes all services performed:
"* * * * *

"(d) In handling, planting, drying, packing, packaging, processing, freezing, grading, storing or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity, but only if such service is performed as an incident to ordinary farming operations, or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market * * *."

ing plant, where they are processed, packaged and then sold.

Employer's contract with the growers provides that ownership of the chicks remains with employer at all times. Employer actively supervises the chicken-raising process and retains the right to move in and assume personal care of the birds if the feeder-grower fails to follow instructions. Employer is responsible for any loss of chicks during the first two weeks; after that the feeder-grower is responsible. Employer provides insurance for losses by reason of acts of nature. The feeder-growers are paid an agreed minimum price per pound for all frying chickens delivered for processing. From this amount the cost of the chicks, feed and any medication is deducted.

Employer began operating in 1950. Since then it has changed its method of acquiring chickens three times. At first it raised the chickens on farms which it leased. Next it switched to contract growers. Initially, the chicks, food and medication were provided without cost to the growers, with the growers' return reduced to provide for cost of the feed. However, the growers sold chickens contrary to their agreement and used the feed for other purposes, in addition to feeding the chicks, and this was costly to the employer, since it was not taken into consideration. Under the present system the price of the chicks, feed and medication is debited to the growers' account and subtracted from what they are paid. The only constant in the employer's operation is the processing plant.

Under the provisions of the law in force on the date this case arose, services performed in processing any agricultural or horticultural commodity "as an

incident to ordinary farming operations" are agricultural labor and thus are exempt from coverage.

■ As we view the evidence, employer's business is processing and marketing chickens, not raising them. The farming operation is being carried on by independent contractors and is merely to insure that employer's processing plant has a continuous supply of suitable chickens.

It is our conclusion that employer is a processor rather than a farmer; that its processing operation cannot be said to be merely "incident to ordinary farming operations."

Employer relies on *Etchechoury v. AVI-Simplot, Inc.*, 93 Idaho 438, 462 P2d 737 (1969), and *Cache Valley Turkey Growers Ass'n v. Industrial Comm.*, 106 Utah 1, 144 P2d 537 (1943). Both of these cases are distinguishable.

*Etchechoury* held that employes of a poultry processing plant were exempt from unemployment tax. In finding that the processing was incident to ordinary farming operations, the court emphasized that 88 per cent of the chickens processed were raised on farms owned by the employer and of the total business investment 56½ per cent was in the farms and only 19¼ per cent in the processing plant. The court distinguished an earlier case where 100 per cent of the concern's investment was in the processing plant.

In *Cache* the poultry processed was raised by the members of a cooperative association on their own farms. These farmer-producers banded together to process the poultry they raised individually.

In the case at bar, as we have already pointed out, the chickens were raised not by employer on his own farm but by contract growers on their own farms

for employer's benefit. The special contractual arrangement between employer and his growers simply does not meet the statutory test of "ordinary farm operations [by employer]." By the same token employer's processing plant can scarcely be called an activity incident to growers' farming operations.

■ ■ As our Supreme Court observed in *Puget Sound B. & D. Co. v. S.U.C.C.*, 168 Or 614, 620, 126 P2d 37 (1942), the Unemployment Compensation Law is remedial legislation and is to be liberally construed to the end that employes receive the benefits intended and thereby effectuate the purpose of the act. Where exemption from unemployment tax is claimed, the statute should be strictly construed against the party asserting such exemption. *Puget Sound B. & D. Co. v. S.U.C.C.*, supra at 621.

Next we take up the issue of alleged estoppel against the Employment Division. According to the record employer has since 1950 reported for unemployment tax purposes the income earned by the employes of its processing operations for the processing of poultry purchased from third parties. Employer has not reported for unemployment tax purposes the income earned by employes in the processing of poultry raised by contract growers. This method of reporting was as directed by the Employment Division. The employer contends that the division is now estopped to require him to retroactively pay employment tax on the income which the division had previously agreed was exempt.

■ Equitable estoppel must be specifically pleaded. *Halvorson v. Blue Mt. Prune Growers Co-op.*, 188 Or 661, 214 P2d 986, 217 P2d 254 (1950); *Williams v. Mount Hood Ry. & Power Co.*, 57 Or 251, 110 P 490,

111 P 17 (1910). It is sufficient, however, if the substantial facts which indicate that the opposite party should not be permitted to avail itself of a particular fact, or act, or omission appear in the pleading. *Cody v. Ins. Co. of Oregon,* 253 Or 587, 454 P2d 859 (1969); *Donahoe v. Eugene Planing Mill,* 252 Or 543, 450 P2d 762 (1969); *Walker v. Fireman's Fund Ins. Co.,* 114 Or 545, 570, 234 P 542 (1925).

■ The employer did not plead estoppel, nor allege the facts giving rise to estoppel. This precludes this court from considering for the first time on appeal whether the Employment Division is estopped to change its position.

■ Finally employer contends that the Supreme Court, rather than the Court of Appeals, has jurisdiction in this case. This contention is based upon ORS 657.285(7), which provides:

> "An appeal may be taken from the judgment of the circuit court to the Supreme Court as in other cases, regardless of the amount of the benefits involved * * *."

This contention is without merit as the above statute does not provide that the jurisdiction of the Supreme Court is exclusive. The Court of Appeals has jurisdiction under ORS 2.515:

> "Notwithstanding any other provision of law, all appeals from lower court decisions where a state agency, as defined in ORS 291.002, is a party shall be taken to the Court of Appeals rather than to the Supreme Court except for those cases where the Oregon Tax Court has jurisdiction."

ORS 2.530 provides:

> "(1) In any appeal before the Court of Appeals where a party asserts * * * that the appeal filed

in the court is properly within the jurisdiction of the Supreme Court, the Court of Appeals shall refer the cause to the Supreme Court, which shall decide the question of jurisdiction in a summary manner * * *.

"* * * * *"

The Supreme Court has directed this court to retain jurisdiction.

Reversed.