Argued February 18, reversed April 14, reconsideration denied
June 11, petition for review denied June 24, 1975

## KLAMATH IRRIGATION DISTRICT, *Petitioner,*
## *v.* EMPLOYMENT DIVISION, *Respondent.*

534 P2d 190

*William Ganong, Jr.,* Klamath Falls, argued the cause for petitioner. With him on the brief were Ganong & Sisemore, Klamath Falls.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Henigson, Stunz & Fonda and Stephen B. Fonda, Nyssa, filed a brief amicus curiae.

Panner, Johnson, Marceau & Karnopp, C. Montee Kennedy, Lyman C. Johnson and Owen M. Panner, Bend, filed a brief amicus curiae on behalf of North Unit Irrigation District and Tumalo Irrigation District.

Before LANGTRY, Presiding Judge, and FOLEY and LEE, Judges.

LANGTRY, P. J.

This appeal, pursuant to ORS 657.684, of a referee's findings, conclusions and order presents the question whether an irrigation district existing under Oregon law and delivering over 96 percent of the water it handles for farming purposes is exempt from paying unemployment compensation taxes for the benefit of its employes. ORS 657.020(1) of the unemployment compensation Act was amended in 1973 to provide that political subdivisions are subject to

paying the tax. Irrigation districts are admittedly political subdivisions. However, the same legislative session re-enacted without change ORS 657.045(1) and (2)(c) which provide:

"(1) 'Employment' does not include agricultural labor.

"(2) 'Agricultural labor' includes all services performed:

"* * * * *

"(c) * * * [I]n connection with the operation or maintenance of ditches, canals, reservoirs or waterways not owned or operated for profit used exclusively for supplying and storing water for farming purposes."

This definition, with the exception of the clause "not owned or operated for profit," came to the Oregon unemployment compensation Act in 1941 amendments via the Federal Social Security Act's (*see* infra pp 65-66) definition of agricultural labor. Oregon Laws 1941, chs 258 and 443.

Summarizing, the record before the referee demonstrated that the district served was originally in farms. It contains 39,930.57 acres with rights running with the land to water it handles. On account of urbanization and land subdivision some 1,361 acres of this land is now divided between about 1,100 owners who use slightly less than 4 percent of its water-right water, generally for esthetic and gardening purposes. The district also delivers water to some 15,000 acres under arrangements with the United States Government, apparently all of which is for farming purposes. There appears to be no dispute as to these summarized facts.

The referee held, inter alia:

"* * * [I]n subsection (c) [of ORS 657.045(2)] 'used exclusively' means then no matter

how infinitestimal or de minimis the amount of water diverted to gardens or lawns may be, [district's] delivery of such to the turnout points negates the intent of the statutory exclusion, as well as removing the services of [district's] employes as exempt 'agricultural labor.' Admittedly this is a strict interpretation of the words 'used exclusively for . . . . . farming purposes', but as prefaced herein all exclusions from the Employment Division Law are to be strictly construed against the employer and in favor of coverage for the employe * * *."

■ ■ It is initially contended by the Employment Division that the enactment of the provision in ORS 657.020(1) that "political subdivisions" shall pay the tax takes precedence over the exemption for agricultural labor re-enacted in ORS 657.045(1) and (2)(c). If this contention is adopted, we would entirely ignore the agricultural labor exemption provision. This we cannot do. The two provisions should be harmonized and given effect if possible, particularly in view of the fact they were both enacted at the same legislative session. *State v. Pearson,* 250 Or 54, 58, 440 P2d 229 (1968); *Daly v. Horsefly Irrigation District,* 143 Or 441, 446, 21 P2d 787 (1933).

■ The central question, then, is whether the words "used exclusively for supplying and storing water for farming purposes" are to be applied strictly, exactly and literally in determining whether the exemption applies. That is what was done in the quotation from the referee's decision, supra. The referee relied on *Standard Oil Co. of Louisiana v. Fontenot,* 198 La 644, 4 So 2d 634 (1941), and *Just-A-Mere Farm v. Peet,* 247 Or 413, 430 P2d 987 (1967). For reasons that are explained infra, we think the rules of these cases were misapplied.

The first case involved a license tax and in it the Louisiana court said exemption provisions in statutes imposing taxes would be strictly construed. As

a general rule, that may be correct, but the rule has its own exceptions. For example, *People's Educational Camp Society, Inc. v. C. I. R.,* 331 F2d 923 (2d Cir), *cert denied* 379 US 839 (1964), was a case involving a statutory exemption from income taxes imposed under the Internal Revenue Code. It gave the exemption to organizations "operated exclusively for the promotion of social welfare * * *." Construing this provision, the court said:

> "* * * The word 'exclusively' as used * * * has not been given a strict interpretation * * * but rather has been interpreted to mean 'primarily.' * * *" 331 F2d at 931.

*See also* Sugarman & Pomeroy, *Business Income of Exempt Organizations,* 46 Va L Rev 424, 425 (1960), in which the authors said:

> "The term 'exclusively' is not applied literally as meaning 100 per cent, but rather has been applied as meaning 'primarily.' * * *" (Footnote omitted.)

In real property taxation a similar construction is often applied as was done in *Plattsburgh Col. B. & E. Ass'n v. Assessors,* 43 Misc 2d 741, 252 NYS2d 229 (Sup Ct Clinton County 1964). The clause there exempted real property " "* * * used exclusively for carrying out' " " 'charitable * * * educational * * * purposes * * *.' " The court held the word "exclusively" thus used means "the primary use of the realty must be in furtherance of the permitted purposes and an occasional minor deviation does not result in taxability [citing authorities] * * *." 252 NYS2d at 234, 237. *See,* for the same rule applied to real property taxation in Oregon, *Mult. School of Bible v. Mult. Co.,* 218 Or 19, 343 P2d 893 (1959).

■ However, the more pertinent inquiry at bar is the construction to be placed upon the word "exclusively" in exemption clauses set in the context of unem-

ployment compensation tax statutes. Social security and unemployment compensation taxes are imposed to accomplish a socially beneficial purpose, and will be construed to accomplish that legislative purpose when exemption provisions are ambiguous. *Puget Sound B. & D. Co. v. S. U. C. C.*, 168 Or 614, 621, 126 P2d 37 (1942); *Holmes v. Morgan,* 10 Or App 242, 498 P2d 830, Sup Ct *review denied* (1972). Both were developed in the states in substantial part from the wording of the Federal Social Security Act. The taxes imposed in both are used for the specific purpose, whereas real property and income taxes universally are imposed to raise general government revenue. Thus, different rules of construction may be applied to them, depending upon the purpose to be served in each statute.[1]

In a part of *Just-A-Mere Farm v. Peet,* supra, to which the referee did not refer in his decision, the Oregon Supreme Court said:

"We begin our inquiry into the meaning of the term 'agricultural labor' and 'farm' as used in ORS 657.045 fully cognizant of the fact that *the meaning of words must be derived from the purpose for which they are used.* The legislative his-

---

[1] For exhaustive discussions of this subject in the context of the word "exclusively" used in cases involving exemptions from taxation for unemployment compensation of employers, *see* the opinions in In Re Gem State Academy Bakery, 70 Idaho 531, 224 P2d 529 (1950), and Sec. of Labor v. Asoc. de Senoras Damas, 94 PRR 131 (1967).

We have not overlooked the following language in Rahoutis v. Unemployment Commission, 171 Or 93, 117, 136 P2d 426 (1943), a case involving construction of the statutes defining coverage under the Oregon unemployment compensation Act where the court is referring to the opinion in Guar. Mtg. Co. of Nashville v. Bryant, 179 Tenn 579, 168 SW2d 182 (1943):

"* * * The Tennessee court held that the statute of that state should be strictly construed as a taxing statute, a proposition which was considered and rejected by this court in the Singer case [Singer Sew. Mach. Co. v. State U. C. C., 167 Or 142, 103 P2d 708, 116 P2d 744, 138 ALR 1398 (1941)] * * *."

tory of the Oregon Department of Employment Law and the related federal unemployment legislation throws little light upon the purpose for excluding agricultural labor from the coverage of the respective acts * * *.

"* * * * *

"* * * [T]he meaning of the term 'agricultural labor' is by no means clear * * *." (Emphasis supplied.) 247 Or at 416-18.

The court then went on to hold that forest or tree farming does not involve agricultural labor within the purpose of the Act. The court did not specifically consider the meaning of the clause in question at bar, but it did say:

"* * * The specific activities listed in the statute to help further define 'agricultural labor' or 'farm' with the possible exception of the activities specified in subsection (2)(d) [which have to do with food processing and packing] all fit within the concept of farming as it is understood in common parlance * * *." 247 Or at 419.

This language appears to say that the exception for irrigation employes describes them as agricultural laborers.[2]

Our research and the briefs that have been presented do not reveal any case where the specific

---

[2] The case we note in the next paragraph was decided in 1940 when state unemployment acts exempted agricultural labor, but had not yet been amended to incorporate the Social Security Act definitions of agricultural labor. In it, the Idaho Supreme Court specifically held, sans statutory definition of the term, that employes of an irrigation district like the one at bar were engaged in agricultural labor. Big Wood C. Co. v. Unemployment C. Div., 61 Idaho 247, 100 P2d 49 (1940). (For a discussion of the history of the agricultural labor definitions in the closely related social security and unemployment compensation laws, see Roberts v. Unemployment Comp. Com., 215 Or 100, 332 P2d 1067 (1958).)

clause under consideration has been construed by any court. However, in *Big Wood C. Co. v. Unemployment C. Div.*, 61 Idaho 247, 100 P2d 49 (1940), the Idaho Supreme Court held that employes of an irrigation district were exempt "agricultural labor." At that time the federal act and state acts patterned thereon, including Idaho's, (which was almost universally the practice) simply exempted "agricultural labor" without defining the term. But the Idaho court pointed out that the Federal Social Security Act, from which the exemption term "agricultural labor" had been taken, was, in 1939, amended by the United States Congress to define "agricultural labor" as

"* * * labor 'in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supplying and storing water for farming purposes.' (Sec. 209 (15)(1)(3), p. 1467.) * * *" 61 Idaho at 253.

*See also Roberts v. Unemployment Comp. Com.*, 215 Or 100, 103, 332 P2d 1067 (1958). As we noted at the start of this opinion, this Social Security Act definition came into the Oregon unemployment compensation Act, word for word, in 1941.

Another category of exemptions using the word "exclusively" exists in both social security and unemployment compensation statutes. This other category existed as ORS 657.070 in the Oregon Unemployment Compensation Law until it was repealed by Oregon Laws 1971, ch 463. It provided:

" 'Employment' does not include service * * * exclusively for religious, charitable, scientific, literary or educational purposes * * *."

This provision apparently was never construed in Oregon. *See Willamette View Manor v. Peet*, 252 Or 142, 448 P2d 546 (1968). But it frequently has been construed in the context of both social security and unemployment compensation acts elsewhere.

*National Capital Girl Scout Coun. v. District Unemp. Comp. Bd.,* 231 F Supp 546 (DDC 1964), presented a case where the same clause as that quoted above from former ORS 657.070 was enacted. Later a legislative amendment removed the word "educational." The Girl Scout organization claimed exemption as being exclusively charitable after the "educational" exemption was eliminated. The court found the organization to be partly—quite a bit—educational. Yet, the court found the organization was primarily charitable and exempt under the then remaining provisions of the clause. The court said:

"* * * Obviously, the word 'exclusively' must not be taken literally. The Court construes it to mean 'primarily' or 'principally' or 'in large part'. We were admonished of old that, 'The letter killeth but the spirit giveth life'. This is the principle that we must invoke in construing words that are not words of art * * *." 231 F Supp at 547.

The appellate court of Puerto Rico, in an exhaustive survey of the rules of construction applying to cases like this, agreed with the construction given in the *Girl Scout* case to the word "exclusively" used in the same clause in another unemployment compensation case. *Sec. of Labor v. Asoc. de Senoras Damas,* 94 PRR 131 (1967) (*see* n 1).

The leading case on the subject, often cited, is *Better Business Bureau v. United States,* 326 US 279, 66 S Ct 112, 90 L Ed 67 (1945). This case involved payment of social security taxes for employes of a Better Business Bureau, which claimed its purpose was "educational" under the same exemption clause we have quoted above. Referring to the word "exclusively" in this context, the United States Supreme Court said:

"* * * This plainly means that the presence of a single noneducational purpose, *if substantial*

*in nature,* will destroy the exemption * * *." (Emphasis supplied.) 326 US at 283.

We have found no case where the context is like that in this case where a court has so narrowly construed the word "exclusively" as did the referee at bar.

*Just-A-Mere Farm v. Peet,* supra, tells us in the context of an unemployment compensation agricultural labor exemption case that the meaning of the words we here construe "must be derived from the purpose for which they are used * * *." The exemption must be assumed to have been included and re-enacted by the legislature for some purpose. Obviously, it was not for the benefit of the employes. *See Stromberg Hatchery v. Ia. Emp. Sec. Comm.,* 239 Iowa 1047, 33 NW2d 498 (1948). And it is difficult to imagine an irrigation district where some minimal part, at least, of water delivered will not be used for a purpose other than a farm purpose. Thus, it is logical that the exemption was included for the purpose of relieving the district of the burden of the tax if none of the water is sold for a profit, and if the organization is devoted "primarily" or "principally" or "in large part" to delivering water for farm purposes, and if the nonfarm purposes to which the water is put are not "substantial." Obviously, on the facts, this test of qualification for the exemption is fulfilled by the petitioner-district.

If it is desirable from the standpoint of public policy and socially beneficial results that the employes of such organizations be covered by the Act, the legislature can accomplish that objective with a simple amendment to the Act.

Reversed.

LEE, J., dissenting.

The central issue in this case is whether peti-

tioner is entitled to an exemption under ORS 657.045(1) and (2)(c) from payments in lieu of taxes required by ORS 657.505(6) of the Employment Division Law.

For exemption, petitioner relies solely on ORS 657.045(1) and (2)(c) which exempts services performed

> "* * * in connection with the operation or maintenance of ditches, canals, reservoirs or waterways not owned or operated for profit *used exclusively* for supplying and storing water *for farming purposes*." (Emphasis supplied.)

Two questions arise: *First,* what does "exclusively" mean? *Second,* does petitioner meet the requirement of "used exclusively * * * for farming purposes"?

The majority, in answer to the first question, has equated "exclusively" with "primarily" or "principally" or "in large part." The difficulty with that equation is that the legislature gave no indication that such latitude was intended. I dissent because I believe that when the legislature said "exclusively" it meant exactly that and no more.

It is fundamental that unless violative of the constitution, we are bound by legislative enactments. *Rockhill v. Benson,* 97 Or 176, 182, 191 P 497 (1920); *Latourette v. Clackamas Co. Et Al.,* 131 Or 168, 170, 281 P 182 (1929). The word "exclusively" is not a technical, legal term or "word of art." It is very much in the public domain and is subject to the mandate of ORS 174.010 which provides:

> "In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted,* or to omit what has been inserted; and where there are several provisions or particulars such construction is, if

possible, to be adopted as will give effect to all."
(Emphasis supplied.)

Webster's New Twentieth Century Dictionary 638
(unabridged, Second Edition, 1964) defines "exclusive" as

"1. excluding all others; shutting out other considerations, happenings, existences, occupations,
etc., * * *

"* * * * *

"4. not shared or divided; sole; single; * * *"
Therefore, it is fair to say that in common usage
"exclusively" means solely, only, admitting of no exceptions—a concept substantially different from
"primarily," "principally," or "in large part" to which
terms the majority has resorted.

Our Supreme Court has held:

"* * * In the absence of a clear legislative
intent to the contrary, this court is bound to give
to the words of a statute their *natural and ordinary
meaning.* * * *" (Emphasis supplied.) *Wimer
v. Miller,* 235 Or 25, 30, 383 P2d 1005, 1007 (1963).

Similarly, the Supreme Court has said:

"* * * If the language used in the statute is
*plain and understandable,* then legislative *intent
must be gathered from the language used* and there
is no need to resort to rules of statutory construction. * * *" (Emphasis supplied.) *State ex rel
Appling v. Chase,* 224 Or 112, 116, 355 P2d 631, 633
(1960).

In *Franklin v. State Ind. Acc. Com.,* 202 Or 237, 241,
274 P2d 279, 281 (1954), we find the rule that:

"* * * It is elementary that when the legislature, in enacting a law, makes use of *plain, unambiguous, and understandable language, it is presumed to have intended precisely what its words
imply.* There is no occasion to go beyond those
words and their plain meaning to ascertain by ap-

plication of rules of statutory construction the legislative purpose." (Emphasis supplied.)

To the same effect are *State of Oregon v. Buck,* 200 Or 87, 93, 262 P2d 495 (1953); *Boling v. Nork,* 232 Or 461, 465, 375 P2d 548 (1962); *Cary v. Metropolitan Ins. Co.,* 141 Or 388, 392, 17 P2d 1111 (1933); *Varrelman v. Flora Logging Co.,* 133 Or 541, 548, 277 P 97, 286 P 541, 290 P 751 (1930); *Blalock v. City of Portland et al,* 206 Or 74, 80-81, 291 P2d 218 (1955).

In the instant case, the legislature employed a term with a plain understandable meaning which the majority declines to follow.

In circumventing the plain understandable meaning of "exclusively", the majority has turned to cases in Idaho, New York, and Puerto Rico, some of which involve exemptions to other than the unemployment law. More relevant guidance has been supplied by our Supreme Court.

In *Puget Sound B. & D. Co. v. S.U.C.C.,* 168 Or 614, 620-21, 126 P2d 37, 40 (1942), our Supreme Court had before it a claim for exemption under the statutory precursor of ch 657 and held that:

"\* \* \* It is clear that this remedial legislation should be liberally construed to the end that employees receive the benefits intended and thereby effectuate the purpose of the act. \* \* \*

"\* \* \* \* \*."

Unemployment legislation is just as much remedial today as it was in 1942. In *Puget Sound,* the court gave another reason for finding coverage:

"\* \* \* Where exemption from a general tax is claimed, the statute should be strictly construed against the party asserting such exemption \* \* \*."

Relying on *Puget Sound,* we have but recently reiterated the same two principles in *Holmes v. Mor-*

*gan,* 10 Or App 242, 247, 498 P2d 830, Sup Ct *review denied* (1972). In *Holmes,* the employer was also claiming a ch 657 agricultural labor exemption, based on ORS 657.045(2)(d). This court denied the exemption and said:

"* * * [T]he Unemployment Compensation Law is remedial legislation and is to be liberally construed to the end that employes receive the benefits intended and thereby effectuate the purpose of the act. Where exemption from unemployment tax is claimed, the statute should be strictly construed against the party asserting such exemption."

If, then, there is any doubt about what "exclusively" means, the foregoing rules drawn from Oregon cases dealing with the unemployment Act compel me to dissent.

Nor does examination of the legislative history of ORS 657.045(1) and (2)(c) lend any support to the majority position—if anything, the opposite is the case.

As Mr. Justice McAllister pointed out, in *Roberts v. State Unemployment Comp. Com.,* 215 Or 100, 103, 332 P2d 1067 (1958), the Oregon definition of "agricultural labor" was taken verbatim from the Social Security Amendments of 1939, Pub L No 379, 53 Stat 1360 (Codified as Int Rev Code of 1954, § 3306(k)(3)). That federal statute incorporated into the definition of "agricultural labor" the language:

"* * * or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supplying and storing water for farming purposes;"

which, in turn, our legislature adopted by Oregon Laws 1941, ch 443, § 1, p 776. In Congress that language had been added to HR 6635 by the Senate Committee on Finance. The full Senate adopted the amend-

ment with no record of debate; the House concurred in like manner. The Senate Finance Committee explained the additional language as follows:

> "* * * Service performed in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used *exclusively* for supplying and storing water for farming purposes will also be excepted under this paragraph. Thus, all service performed in the employ of an organization operating *exclusively* for the purpose of supplying water to farms would be exempt. Most of such organizations are exempt under the present law as *governmental agencies*. The others are usually *nonprofit companies* formed by the farmers who use the water." (Emphasis supplied.) Committee on Finance, S Rep No 734, 76th Cong, 1st Sess 63 (1939).

There is nothing in the report to relax the term "exclusively"; indeed, the word was used twice—both times without modifiers. We are therefore obliged to construe the term with the full impact of its meaning.

With regard to legislative intent, it is noteworthy that the Senate Finance Committee in 1939 took cognizance of the exemption of "governmental agencies" which are the same as the "political subdivisions" whose exemption was withdrawn by Oregon Laws 1973, ch 715, § 1, pp 1650-51, (codified as ORS 657.020(1)). That leaves only the other "nonprofit companies" for whom this ORS 657.045(1) and (2)(c) exemption is intended.

The majority's mention of *Mult. School of Bible v. Mult. Co. et al*, 218 Or 19, 343 P2d 893 (1959), bears closer scrutiny. In that case the court was faced with the question whether a noncampus building housing a school's superintendent of buildings and his wife and the dining hall supervisor was "exclusively used" for the exempt purposes of the school. In addition, the court was also confronted with the question of

whether a bookstore located several miles from the campus operated by the same school with store profits used exclusively for exempt purposes was exempt. The court held that the residence to be exempt and the bookstore to be nonexempt. In the course of its discussion, the court spoke of the incidental-use test urged by petitioner as follows:

"If the incidental use (in the case at bar, the residential use by essential employees of plaintiff) does not interrupt the exclusive occupation of the buildings for school purposes, but dovetails into or rounds out those purposes, then there can fairly be said to be left an *exclusive use* in the school on which the law lays hold for purposes of tax exemption * * *.

"* * * * *

"* * * A given facility does not have to satisfy the test of 'absolute indispensability' to the purposes of the institution in order to enjoy tax exemptions. It is enough if it can be said to be *incidental to the prime purposes* of the institution and *reasonably necessary to the accomplishment of that purpose * * *.*" (Emphasis supplied.) *Mult. School of Bible v. Mult. Co. et al,* supra, 218 Or at 30-31.

It is thus evident from *Mult. School* that for an exemption to be based on incidental use, *such use must be reasonably necessary to the primary use.* There has been no showing in the instant case that the nonfarming uses of petitioner are "reasonably necessary to the accomplishment of" the exempt farming use.

Similarly, the majority's reliance on *Just-A-Mere Farm v. Peet,* 247 Or 413, 419, 430 P2d 987 (1967), seems misplaced. That case dealt with a claim of exemption based on plaintiff's "* * * tree growing enterprise * * *" including "* * * preparation and cultivation of the soil, suppression of grass, plant-

ing of seedling trees, spraying, and maintaining machinery used in such operations * * *." The court held that plaintiff's activities were insufficiently related to farming in its "traditional sense" to qualify for an exemption under ORS 657.045.

It appears to me that the uses of the water admitted by petitioner in the instant case for watering lawns and family gardens are as much, or more, removed from farming in its "traditional sense" as the growing of tree crops. While it is true that the language in *Just-A-Mere Farm* was not addressed specifically to ORS 657.045(2)(c), I consider it to be controlling because it did relate to the scope of "agricultural labor" as used in ORS 657.045(2).

I find no reason, in logic, public policy, case law, or in ORS 657.045 itself, that would permit a more liberal interpretation of "farming purposes," as used in ORS 657.045(2)(c), than the interpretation given by Mr. Justice O'CONNELL, speaking for our Supreme Court in *Just-A-Mere Farm,* to the words "agricultural labor" in the generic sense.

In *S. W. Or. Dairy Herd Ass'n v. Morgan,* 17 Or App 300, 521 P2d 1308 (1974), this court dealt with an exemption claimed under ORS 657.045(2)(d) relating to a dairy testing service and applied the language and reasoning of *Just-A-Mere Farm* in denying exemption from the Oregon Unemployment Compensation Law. We should do likewise in the instant case.

The majority concedes that about 4 per cent of petitioner's water goes to "esthetic and gardening purposes." "Exclusively," however, does not mean 96 per cent. Whether one turns to (1) common usage, (2) the dictionary, (3) legislative history and intent, (4) remedial public need, or (5) the clear implications of our own Oregon decisions, petitioner's asserted exemption from the Unemployment Compensation Law should be denied.

Finally, there remains the scope of *de minimis* variances from the ORS 657.045(2)(c) exemption. I would not hold that the words "used exclusively" proscribe a farmer from using such water to fill the radiator of his urban friend's car or other similar use. Such use is clearly within the *de minimis* rule. I also recognize that it would be unreasonable to require petitioner to continuously monitor the ultimate use made of the water delivered for "farming purposes." But, the case at bar is of a quite different character. The petitioner is knowingly supplying water to users who are not using it for "farming purposes" in the "traditional sense." Consequently, petitioner clearly fails to qualify for the ORS 657.045(2)(c) exemption.

For the foregoing reasons, I respectfully dissent.